## Wm. Chambers' Adm'r v. Fort Bend County.

Where a county prepared a plan and specifications for building a jail, and let the contract to the lowest bidder at public outcry, taking bond with security for the performance of the contract by a given time, and the contractor, having taken the contract at less than one-fourth of a fair price, failed to perform any part of it, and the county let it again at public outcry, after due advertisement, and sued the original contractor and his security, on their bond, it was held that the difference between the prices at which the contract was let, was not the measure of damages, but that the proper measure of damages was the actual damage to the county, upon the basis of a fair price at each letting.

Appeal from Fort Bend.

*W. D. Mitchell*, for appellant.

*Jones & Jones*, for appellee.

Lipscomb, J. The facts of this case are peculiar. The County Court of Fort Bend County let out to the lowest bidder, the building of a brick jail, according to a plan and speci-

fications exhibited at the time of letting out the contract. William Chambers, the intestate, bid off the building at one thousand dollars, and gave bond and security in the penalty of five thousand dollars, for the performance of the contract; he died without having performed any part towards fulfilling his contract. The contract was again advertised and bid off at four thousand five hundred dollars. Suit was then instituted against the administrator of Chambers and the security in the bond, to recover damages for its breach. There was a verdict for thirty-five hundred dollars, being the difference between the one thousand dollars for which it was first bid off and the last bid of four thousand five hundred dollars. There was a motion for a new trial, which was overruled, and defendant appealed. It was in evidence that the building was not bid off the last time for more than it was worth; that it was expected that it would not be undertaken for less than five thousand dollars. The person who cried out the contract when Chambers bid it off for one thousand dollars, testified that he hesitated to cry the bid, and spoke to Chambers, reminding him of the work to be done; that Chambers said he knew what he was about, that he would do something for the county, and that he would go to Houston and engage workmen, and have the jail built. There was but the one bid.

Nothing to our mind is clearer than that, at the time Chambers, the intestate, bid off the contract, he was laboring under some hallucination that disqualified him from reasoning correctly on the obligations of the contract he had entered into. His remark about wishing to do something for the county, is not at all inconsistent with a disordered intellect. The mind's disease is often made manifest, by the party proposing most magnificent schemes of benevolence; often imagining that such things are looked for by the world, and that no other persons possess the means of so much liberality. The contract carries with it evidence of its invalidity. The inadequacy of compensation for which the work was to be done, is so great as at once to shock the moral sense of right in every right minded

person. And if the Courts of law would regard, on stern principles of law, such a contract as binding, the principles of equity jurisprudence would never permit it to be recovered to the full amount of the difference in the two bids, but would regard it more in the light of a penalty, and reduce it to what in equity and good conscience ought to be paid; and it would seem difficult, on principles of equity, to allow the county more than the actual loss incurred; and this would be the difference between what would have been a fair price for the work at the time it was bid off, and what it required afterwards, from delay and change of the value of labor and material, to have the work performed. The opportunity of having the jail erected for comparatively nothing, could not be regarded morally, as a loss to the county. The public can surely never claim at the hands of a citizen something for nothing. But it is questionable, from the state of mind of the contractor, whether he could bind himself at all or not; and this supposition acquires so much strength from the affidavit of Dr. Farris, used as an exhibit in support of the motion for a new trial, that the motion ought to have been sustained. But if anything could be recovered at all on the contract, it would only be the difference as before stated, between what the work was really worth at the time it was first bid off, and what it was last bid off at; the disproportion being so great between the value of the work and what he was to have received in compensation, that the principles of equity, dealing with a contract against conscience, would reduce the amount to that standard, and the Court below should have so charged the jury. The judgment is reversed and the cause remanded.

Reversed and remanded.